PAUL L. REIN, Esq. (SBN 43053)
AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  510/832-5001
Facsimile:  510/832-4787
info@reincleftonlaw.com

Attorneys for Plaintiff
ARTHUR RENOWITZKY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| ARTHUR RENOWITZKY,<br><br>    Plaintiff,<br><br>    v.<br><br>THE SPEARMINT RHINO COMPANIES WORLDWIDE, INC.; SANTA MARIA RESTAURANT ENTERPRISES, INC.<br><br>    Defendants. | CASE NO. 2:22-cv-8815<br><u>Civil Rights</u><br><br>**COMPLAINT FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES:**<br><br>1. **Violations of Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.*)**<br><br>2. **Violation of the California Unruh Act (Cal. Civil Code §§ 51 and 52)**<br><br>3. **Violation of the California Disabled Persons Act (Cal. Civil Code § 54 *et seq.*)**<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff ARTHUR RENOWITZKY complains of Defendants THE

SPEARMINT RHINO COMPANIES WORLDWIDE, INC.; SANTA MARIA

RESTAURANT ENTERPRISES, INC. and each of them, and alleges as follows:

1.    **INTRODUCTION:** Defendants denied Plaintiff ARTHUR

RENOWITZKY an accessible restroom, service counter and path of travel at the

Spearmint Rhino Club located at 505 S. Broadway, Santa Maria, California.  On

July 8th and 9th Plaintiff traveled to Santa Maria, California, to celebrate a friends

1

upcoming wedding with a bachelor party. On July 8, 2022, Plaintiff and his group of friends went to the Spearmint Rhino Club after dinner for some entertainment and beverages.  After ordering a drink and finding a place to sit, Plaintiff needed to use the restroom.  He asked an employee where the restrooms were located, and she directed him towards the back corner of the club.  When entered the restroom, however, he discovered that he was unable to get his wheelchair into the restroom stall. Plaintiff was forced to expose himself and change his catheter in the middle of the restroom without the privacy that a stall or private restroom affords.  Other customers of the club were coming in and out of the restroom as he was carrying out this private task.  Plaintiff felt humiliated.

2.     Defendants denied disabled Plaintiff ARTHUR RENOWITZKY accessible public facilities at Spearmint Rhino Club in Santa Maria, California. Plaintiff ARTHUR RENOWITZKY is a "person with a disability" or "physically handicapped person" who requires the use of a wheelchair for mobility.  He is unable to use portions of public facilities which are not accessible to mobility disabled persons.  On or about July 8, 2022, Plaintiff was denied his rights to full and equal access at the Spearmint Rhino Club.  He was denied his civil rights under both California law and federal law, and continues to have his rights denied, because these facilities were not, and are not now, properly accessible to physically disabled persons, including those who use a wheelchair or other assistive devices for mobility.

3.     Plaintiff seeks injunctive relief to require Defendants to make these facilities accessible to disabled persons and to ensure that any disabled person who attempts to patronize the subject premises will be provided accessible facilities. Plaintiff also seeks recovery of damages for his discriminatory experiences and denial of access and of civil rights, which denial is continuing as a result of Defendants' failure to provide disabled accessible facilities.  Plaintiff also seeks recovery of reasonable statutory attorney fees, litigation expenses and costs, under

1  federal and state law.

2    4.  **JURISDICTION:**  This Court has jurisdiction of this action pursuant

3  to 28 USC section 1331 for violations of the Americans with Disabilities Act of

4  1990, 42 USC sections 12101 *et seq*.  Pursuant to pendant jurisdiction, attendant

5  and related causes of action arising from the same facts are also brought under

6  California law, including but not limited to violations of Health & Safety Code

7  sections 19953-19959; California Civil Code sections 51, 52, 54, 54.1, 54.3 and 55;

8  and Title 24 California Code of Regulations, the California State Building Code.

9    5.  **VENUE:**  Venue is proper in this court pursuant to 28 USC

10  section 1391(b) and is founded on the fact that the real property which is the subject

11  of this action is located in this district and that Plaintiff's causes of action arose in

12  this district.

13    6.  **INTRADISTRICT:**  This case should be assigned to the Western

14  Division as the real property which is the subject of this action is located in this

15  intradistrict and Plaintiff's causes of action arose in this intradistrict.

16    7.  **PARTIES:**   Plaintiff is a qualified physically disabled person who

17  cannot walk due to paraplegia and who requires use of a wheelchair for locomotion.

18  He also owns a disabled licensed vehicle which entitles him to park in a properly

19  configured disabled accessible parking space.  He has been issued a California state

20  placard for disabled parking.

21    8.  Defendants THE SPEARMINT RHINO COMPANIES

22  WORLDWIDE; SANTA MARIA RESTAURANT ENTERPRISES, INC. are and

23  were the owners, operators, lessors and/or lessees of the subject business, property

24  and buildings at all times relevant to this Complaint.  Plaintiff is informed and

25  believes that each of the Defendants herein is the agent, employee or representative

26  of each of the other Defendants, and performed all acts and omissions stated herein

27  within the scope of such agency or employment or representative capacity and is

28  responsible in some manner for the acts and omissions of the other Defendants in

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

proximately causing the damages complained of herein.

9.     The Spearmint Rhino Club is a place of "public accommodation" and "business establishment" subject to the requirements of 42 USC section 12181(7)(B) and (C) of the Americans with Disabilities Act of 1990; of California Health & Safety Code sections 19953 *et seq.*; of California Civil Code sections 51 *et seq.*; and of California Civil Code sections 54 *et seq.*  On information and belief, the Spearmint Rhino Club and its facilities were built after July 1, 1970, and since then have undergone construction and/or "alterations, structural repairs, or additions," subjecting each such facility to disabled access requirements per Health & Safety Code sections 19953-19959 *et seq.*, and, as to construction and/or alterations since January 26, 1993, to the disabled access requirements of section 12183 of the Americans with Disabilities Act of 1990.  Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations, also known as the California Building Code.  Further, irrespective of the alteration history, such premises are subject to the "readily achievable" barrier removal requirements of Title III of the Americans with Disabilities Act of 1990, as defined by the ADA. 42 USC § 12181(9).

10.     **FACTUAL STATEMENT:**  Plaintiff Arthur Renowitzky founded the Life Goes on Foundation in 2008, "a non-political, non-profit organization," created to "provide [spinal cord injury] survivors and their families with support to aid in the life-long process towards recovery." See https://www.lgof.org/about_us .  The Life Goes on Foundation works "nationally to advance the personal independence and wellness of individuals living with disabilities."  Plaintiff prides himself on not just his independence but on empowering other disabled persons, including coaching for the Junior Warriors children's wheelchair basketball team.  A news report video depicting the charity work that Plaintiff has done and his interactions with several NBA Warriors players can be seen here:
https://abc7news.com/community-events/paralyzed-dubs-fan-inspires-community-

and-the-warriors/5264759/.

11.     Plaintiff is a disabled person resulting from a spinal cord injury that he suffered because of a random act of gun violence by a stranger in 2008. His spinal cord between the T2 and T3 vertebrae is severed. He has no feeling from his chest downward and is unable to walk or climb stairs. He uses a manual wheelchair and has good upper body strength from working out and playing wheelchair basketball. His body signals to him when he needs to relieve himself, including warmth in his stomach, twitching, and sweating.  Plaintiff has learned to interpret these signals and must use the restroom within 5 to 10 minutes of noticing them to avoid experiencing a bodily functions accident.  He relies on businesses and other public places providing accessible restroom facilities so that he can carry out these functions in a regular and timely manner.

12.     On July 8, 2022, Plaintiff traveled to Santa Maria, California to attend a bachelor party for a close friend.  The group had a nice dinner together, and then they decided to go to the Spearmint Rhino Club for some beverages and entertainment.

13.     Plaintiff and his group of friends arrived at the Club around 9:00 pm. Plaintiff parked his car in a designated accessible parking space, exited his vehicle and pushed himself to the entrance of the Club.

14.     Plaintiff showed his ID to the security personnel at the front entrance. Then he approached the service counter near the door to pay his entrance fee.  The service counter was too high for Plaintiff to comfortably reach, and it was difficult to talk to the employee at the front entrance who was collecting the money. However, Plaintiff managed to complete his transaction with difficulty.

15.     After entering the Spearmint Rhino Club, Plaintiff ordered a bottle of water and then his group looked for table to sit at.  Plaintiff found it very difficult to find a path of travel through the club large enough to accommodate his wheelchair while his group was looking for a table. He had to ask several people to move, and

he had to ask his friends to move empty chairs so that he could get through the crowded club. The group found a table to sit at, and then most of the group went up to the stage to see the dancers up close.  Plaintiff could tell that the path of travel from the table where they were sitting to the stage was too crowded for him to traverse, so he stayed at the table rather than going with the rest of his group. Plaintiff felt self-conscious about being segregated from the rest of his group due to the inaccessibility of the Club.

16.     After the group had been at the Spearmint Rhino for about 30 minutes, Plaintiff needed to use the restroom.  He asked one of the servers for directions to the restroom.  The server pointed Plaintiff towards the back corner of the Club. Plaintiff asked one of his friends to go with him because he needed assistance moving chairs out of the way so that he could roll himself to the restroom.

17.     Plaintiff and his friend headed to the back of the Club where the server had directed.  Again, the path of travel was blocked by the crowed tables and chairs in the Club.  Plaintiff made it to the restroom with the assistance of his friend.

18.     Plaintiff entered the restroom, and he saw that the restroom was not accessible.  There was a toilet in a standard sized stall that his wheelchair clearly would not fit into.  There were no grab bars, and many of the other accessories were difficult for him to reach, including the sink and soap dispenser.

19.     Plaintiff knew that he needed to use the restroom soon or he would experience a bodily functions accident. Plaintiff made the difficult decision to change his catheter out in the open, in the middle of the restroom instead of having an accident.  There was no way for him to change his catheter in private, so Plaintiff had to endure the embarrassment of having other club patrons enter and exit the restroom while he was carrying out this extremely private function.

20.     Plaintiff changed his catheter as quickly as possible, and when he was disposing of his catheter supplies, he got some waste on the wheels of his wheelchair. Plaintiff wheeled himself up to the sink with difficulty due to the

configuration of the restroom and cleaned himself up. Despite washing his hands and wiping the wheels of his wheelchair off with wipes, Plaintiff did not feel clean, and he worried that he smelled of urine.

21.     Plaintiff exited the restroom and headed back to the table with his friend.  On his way back, Plaintiff asked a manager if there was another restroom in the Club that he could use that might be more accessible.  The manager of the Club told Plaintiff that the restroom he had used was the only public restroom in the club.

22.     Plaintiff and his friend returned to the table, but Plaintiff was uncomfortable staying at the Club longer due to the lack of available accessible restroom. After about 30 minutes, he and his friend left and went back to the hotel. Plaintiff's night was ruined, and worse, he felt like he had contributed to ending his friend's bachelor party early. The inaccessible conditions of the Spearmint Rhino caused Plaintiff significant difficulty, discomfort, and embarrassment.

23.     Defendants have failed to provide an accessible restroom.  To the extent that they could not make their restroom fully accessible because to do so was not readily achievable, they failed to make the restroom as accessible as possible or to provide any accessible features so that disabled persons could access the restroom.  Plaintiff estimates the costs of improving access in the restroom can range between $300 - $600 for remediating each individual element to make the premises and restroom more accessible to the maximum extend feasible.  For example, installing grab bars might cost $300.  Removing the partitions to create a unisex restroom could cost $500. Other items cost almost nothing to change, such as relocating paper towel, toilet paper, and soap dispensers.  Each of these are easy to do and do not cost very much to accomplish, and the benefit to disabled persons and Plaintiff is the ability to use the restroom which allows them to use the premises at all. Similarly, relocating or even replacing chairs and tables to allow an accessible path of travel or lowering the height of fixtures costs less than $500 each and would allow fuller enjoyment of the facility for disabled persons and Plaintiff.

24.     Notably, based on publicly available building records and City Attorney correspondence, Defendants appear to have engaged in illegal and unpermitted construction and alteration projects in 1997, shortly after they occupied the space.  These projects did not include upgrading the accessibility of the restrooms as required by law.  To the extent these illegal alterations were performed, Defendants should be required to provide fully accessible restrooms regardless of cost or feasibility as those defenses should not protect illegal conduct.

25.     The above referenced barriers to access are listed without prejudice to Plaintiff citing additional barriers to access by an amended complaint after inspection by Plaintiff's access consultant. *Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011); *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA), Inc.*, 631 F.3d 939 (9th Cir. 2011).  All of these barriers to access render the premises inaccessible to physically disabled persons who are mobility impaired, such as Plaintiff, and are barriers Plaintiff may encounter when he returns to the premises.  All facilities must be brought into compliance with all applicable federal and state code requirements, according to proof.

26.     Further, each and every violation of the Americans with Disabilities Act of 1990 also constitutes a separate and distinct violation of California Civil Code section 54(c) and 54.1(d), thus independently justifying an award of damages and injunctive relief pursuant to California law, including but not limited to Civil Code sections 54.3 and 55.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**42 USC §§ 12101 *et seq***

27.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 26 of this Complaint and incorporates them herein as if separately re-pleaded.

28.     In 1990 the United States Congress made findings that laws were

8

needed to more fully protect "some 43,000,000 Americans [with] one or more physical or mental disabilities;" that "historically, society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;" that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous..." 42 U.S.C. §12101.

29.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

30.    In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

31.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*). The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which include but

9

are not limited to any "restaurant, bar or other establishment serving food or drink" and any "place of exhibition or entertainment." 42 USC § 12181(7)(B) and (C).

32.     The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative

methods if such methods are readily achievable."

The acts and omissions of Defendants set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

33.     The removal of each of the physical barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the architectural and/or policy barriers complained of herein were already required under California law.  Further, on information and belief, alterations, structural repairs or additions since January 26, 1993, have also independently triggered requirements for removal of barriers to access for disabled persons per section 12183 of the ADA.  In the event that removal of any barrier is found to be "not readily achievable," Defendants still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."  In this case, for example, Defendants could remove the stall partitions in the men's restroom to create a single accommodation restroom rather than maintaining an inaccessible restroom.

34.     The ability to use a restroom is a fundamental necessity of accessing and using a club. So too is the ability to enter and exit the facility, and move around the premises unimpeded by barriers to access.  Therefore, the benefits of creating a restroom with accessible does not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a store, such as the costs of as ensuring fire safety.  It is thus readily achievable to remove these barriers.

35.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendants' actions, policies, and physical premises have denied and continue to deny full and equal access to

11

Plaintiff and to other mobility disabled persons in other respects, which violate Plaintiff's right to full and equal access and which discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

36.     Defendants' actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the Spearmint Rhino Club and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendants' goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.  Plaintiff intends to return to patronize the Spearmint Rhino Club once barriers to access have been removed.

37.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,* Plaintiff ARTHUR RENOWTIZKY entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendants have continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2)

> [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

38.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal

Regulations adopted to implement the Americans with Disabilities Act of 1990. Plaintiff ARTHUR RENOWITZKY is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the Spearmint Rhino Club, in light of Defendants' policies and physical premises barriers.

39.   Plaintiff seeks an award of reasonable attorney fees, litigation expenses and costs pursuant to 42 U.C.S section 12205.

WHEREFORE, Plaintiff requests relief as outlined below

## SECOND CAUSE OF ACTION:
## VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED BY CIVIL CODE SECTION 51(f)

40.   Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 39 of this Complaint and incorporates them herein as if separately re-pleaded.

41.   At all times relevant to this complaint, California Civil Code section 51 has provided that physically disabled persons are free and equal citizens of the state, regardless of medical condition or disability:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, *disability, or medical condition* are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Civil Code § 51(b). [Emphasis added.]

42.   California Civil Code section 52 provides that the discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provisions of sections 51 and 52.

43.   Each of Defendants' discriminatory acts or omissions constitutes a separate and distinct violation of California Civil Code section 52, which provides

13

that:

> Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the actual damages, and any amount that may be determined by a jury, or a court sitting without a jury, up to a maximum of three times the amount of actual damage but in no case less than four thousand dollars ($4,000), and any attorney's fees that may be determined by the court in addition thereto, suffered by any person denied the rights provided in Section 51, 51.5, or 51.6.

44.     Any violation of the Americans with Disabilities Act of 1990 also constitutes a violation of California Civil Code section 51(f), thus independently justifying an award of damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per Civil Code section 51(f), "A violation of the right of any individual under the Americans with Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

45.     The actions and omissions of Defendants as herein alleged constitute a denial of access to and use of the described public facilities by physically disabled persons within the meaning of California Civil Code sections 51 and 52.  As a proximate result of Defendants' action and omissions, Defendants have discriminated against Plaintiff in violation of Civil Code sections 51 and 52, and are responsible for statutory, and compensatory damages to Plaintiff, according to proof.

46.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees,

14

1  litigation expenses and costs pursuant to the provisions of California Code of Civil

2  Procedure section 1021.5 and other applicable law.

3       WHEREFORE, Plaintiff prays for damages and injunctive relief as

4  hereinafter stated.

5  **THIRD CAUSE OF ACTION:**
   **DAMAGES AND INJUNCTIVE RELIEF**

6  **FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC**
   **FACILITIES  IN A PUBLIC ACCOMMODATION**

7  **(California Health & Safety Code §§ 19955 *et seq*; Civil Code §§ 54 *et seq*.)**

8       47.    Plaintiff repleads and incorporates by reference, as if fully set forth

9  again herein, the factual allegations contained in Paragraphs 1 through 46, above,

10 and incorporates them herein by reference as if separately repled hereafter.

11      48.    Plaintiff ARTHUR RENOWITZKY and other similarly situated

12 physically disabled persons, including those who require the use of an assistive

13 device for mobility, are unable to use public facilities on a "full and equal" basis

14 unless each such facility is in compliance with the provisions of California Health

15 & Safety Code sections 19953 -19959.  Plaintiff is a member of that portion of the

16 public whose rights are protected by the provisions of Health & Safety Code

17 sections 19953 *et seq*.  Further, Plaintiff is also protected against policy and

18 architectural barrier discrimination by California Civil Code sections 54 and 54.1,

19 the "Disabled Persons Act."  "Individuals with disabilities or medical conditions

20 have the same right as the general public to the full and free use of the streets,

21 highways, sidewalks, walkways, public buildings, medical facilities, including

22 hospitals, clinics, and physicians' offices, public facilities, and other public places."

23 Civil Code § 54(a).  Furthermore, "Individuals with disabilities shall be entitled to

24 full and equal access, as other members of the general public, to accommodations,

25 advantages, facilities, . . . places of public accommodation, amusement, or resort,

26 and other places to which the general public is invited."  Civil Code § 54.1(a).

27 Additionally, any violation of the ADA, including but not limited to any violation

28 of 42 USC sections 12182 and 12183, is also incorporated as a violation of the

15

1   Disabled Persons Act.  Civil Code §§ 54(c), and 54.1(d).

2       49.    Title 24, California Code of Regulations, formerly known as the

3   California Administrative Code and now also known as the California Building

4   Code, was in effect at the time of each alteration which, on information and belief,

5   occurred at such public facility since January 1, 1982, thus requiring access

6   complying with the specifications of Title 24 whenever each such "alteration,

7   structural repair or addition" was carried out.  On information and belief,

8   Defendants and/or their predecessors in interest carried out new construction and/or

9   alterations, structural repairs, and/or additions to such buildings and facilities

10  during the period Title 24 has been in effect.  Further, Plaintiff alleges, on

11  information and belief, that construction, alterations, structural repairs, and/or

12  additions which triggered access requirements at all relevant portions the Spearmint

13  Rhino Club, also occurred between July 1, 1970, and December 31, 1981, and

14  required access pursuant to the A.S.A. (American Standards Association)

15  Regulations then in effect, pursuant to the incorporated provisions of California

16  Government Code sections 4450 *et seq*.  Further, on information and belief,

17  additions to the building after the initial construction also occurred after January 1,

18  1972, triggering access requirements per Health and Safety Code section 19959.

19  Alterations or additions after January 26, 1993 trigger ADA liability and

20  requirements per 42 USC sections 12182 and 12183 of the ADA.

21      50.    **INJUNCTIVE RELIEF:**  Plaintiff seeks injunctive relief to prohibit

22  the acts and omissions of Defendants as complained of herein which are continuing

23  on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff

24  and other members of the public who are physically disabled from full and equal

25  access to these public facilities.  Such acts and omissions are the cause of

26  humiliation and mental and emotional suffering of Plaintiff in that these actions

27  continue to treat Plaintiff as an inferior and second-class citizen and serve to

28  discriminate against him on the sole basis that he is a person with disabilities who

requires the use of a wheelchair or other assistive device for movement in public places.

51.     Plaintiff is deterred from returning to use these facilities, because the lack of access will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendants continue, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize the Spearmint Rhino Club and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other mobility disabled persons. Plaintiff specifically intends to return and patronize the Spearmint Rhino Club once it is made accessible, including its path of travel to the restroom.

52.     The acts of Defendants have proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to all inaccessible areas of the premises that he has personally encountered, and, as to all areas identified during this litigation by Plaintiff's access consultant, that he or other physically disabled persons may encounter in the future. *Doran v. 7-Eleven, Inc.,* 524 F.3d 1034 (9th Cir. 2008); *Chapman v. Pier One Imports (USA)*, *Inc.*, 631 F. 3d 939 (9th Cir. 2011); *Oliver v. Ralphs Grocery* Co., 654 F.3d 903 (9th Cir. 2011).   As to those of the Defendants that currently own, operate, and/or lease (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices and barriers that deny full and equal access for disabled persons, and for reasonable statutory attorney fees, litigation expenses and costs.

53.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the ways complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons.

Such injunctive relief is provided by California Health & Safety Code section 19953 and California Civil Code section 55, and other law. Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Health & Safety Code section 19953, Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

54.   **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendants and each of them in owning, operating, leasing, constructing, altering, and maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated.  Defendants' actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is physically disabled and unable, because of the architectural and other barriers created and/or maintained by the Defendants in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  These violations have deterred Plaintiff from returning to attempt to patronize the Spearmint Rhino Club and will continue to cause him damages each day these barriers to access continue to be present.  Plaintiff to intends to return the Spearmint Rhino Club once the premises has been made accessible for his full and equal enjoyment.

55.   **FEES AND COSTS:**  As a result of Defendants' acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the provisions

18

of Civil Code sections 54.3 and 55, and California Health & Safety Code section 19953. Additionally, Plaintiff's lawsuit is intended to require that Defendants make their facilities accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

WHEREFORE, Plaintiff requests relief as outlined below.

## PRAYER

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury as a result of the unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

WHEREFORE, Plaintiff ARTHUR RENOWITZKY prays for judgment and the following specific relief against Defendants:

1.      Issue a preliminary and permanent injunction directing Defendants as current owners, operators, lessors, and/or lessees of the subject property and premises to modify the above described property, premises, policies and related facilities to provide full and equal access to all persons, including persons with physical disabilities for use of their facility, including restroom facilities, and including alternate methods of providing restroom facilities if so required; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendants to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided; to cease any discriminatory policies, and to train Defendants' employees and agents

1    in how to recognize disabled persons and accommodate their rights and needs;

2         2.     Retain jurisdiction over the Defendants until such time as the Court is

3    satisfied that Defendants' unlawful policies, practices, acts and omissions, and

4    maintenance of physically inaccessible public facilities and policies as complained

5    of herein no longer occur, and cannot recur;

6         3.     Award to Plaintiff all appropriate damages, including but not limited to

7    statutory damages and general damages in amounts within the jurisdiction of the

8    Court, all according to proof;

9         4.     Award to Plaintiff all reasonable statutory attorney fees, litigation

10   expenses, and costs of this proceeding as provided by law;

11        5.     Award prejudgment interest pursuant to Civil Code section 3291; and

12        6.     Grant such other and further relief as this Court may deem just and

13   proper.

14   Date: December 5, 2022                         REIN & CLEFTON

15                                                  ___/s/ Aaron Clefton
16                                                  By AARON CLEFTON, Esq.
                                                    Attorneys for Plaintiff
17                                                  ARTHUR RENOWIZTKY

18
19                                    **JURY DEMAND**

20        Plaintiff hereby demands a trial by jury for all claims for which a jury is
21   permitted.

22
23   Date: December 5, 2022                         REIN & CLEFTON

24
25                                                  ___/s/ Aaron Clefton
                                                    By AARON CLEFTON, Esq.
26                                                  Attorneys for Plaintiff
27                                                  ARTHUR RENOWITZKY

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES